FILED
2013 Feb-08  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JASON D. CUMMINGS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:11-CV-4332-LSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.      Introduction

The plaintiff, Jason D. Cummings, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Cummings timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Cummings was thirty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision and has an eighth grade education. (Tr. at 20.) His past work experiences include employment as a janitor and stage hand. (Tr. at 27, 57.) Mr. Cummings claims that he became disabled on September 7, 2007, due to a motor

vehicle accident wherein he sustained head trauma, and due to seizures, migraine headaches every day, and anxiety.  (Tr. at 20.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.   20 C.F.R.  §§  404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Cummings meets the insured status requirements of the Social Security Act through March 31, 2009. (Tr. at 17.) He further determined that Mr. Cummings has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff suffers from the following "severe" impairments based on the requirements set forth in the regulations: history of traumatic head injury, history of

grand mal seizures (controlled with medication), headaches, amnestic disorder, depressive disorder, anxiety disorder, and cognitive disorder. (Tr. at 18.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (*Id.*) The ALJ did find that the plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, he did not find Mr. Cummings's statements concerning the intensity, persistence, and limiting effects of these symptoms to be totally credible to the extent they are inconsistent with the RFC assessment. (Tr. at 21.) After consideration of the entire record, the ALJ determined that the plaintiff has the following physical RFC:

> [T]o occasionally lift and/or carry 20 pounds with the right hand and 30 pounds with the left hand and occasionally 50 pounds with both hands; sit at one time for an hour; stand at one time for 15-20 minutes; and walk at one time for one-fourth of one mile.  In addition with a history of a seizure disorder which is controlled with medication he should avoid unprotected heights, work around dangerous machinery, and work that requires driving. Furthermore he may need to alternate positions throughout an eight-hour workday.

(Tr. at 19.)  With regard to Plaintiff's mental RFC, the ALJ found as follows:

The claimant is not markedly limited in any category given, but is moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual with customary tolerances, work in coordination with or proximity with others without being distracted by them, complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. The claimant can understand, remember and complete simple tasks; his concentration for detailed tasks would be limited at times by emotional or organic factors; he can maintain attention sufficiently to complete simple one- to two-step tasks for periods of at least two hours without the need for special supervision or extra work breaks; he can maintain basic standards of personal hygiene and grooming; he is able to complete an eight-hour workday provided all customary work breaks are provided; he can tolerate casual non-intensive interaction with members of the general public and coworkers; supervision and criticism should be supportive and nonconfrontational; and changes in the work environment or expectations should be infrequent and introduced gradually.

(*Id.*)

According to the ALJ, Mr. Cummings is unable to perform any of his past relevant work, he is a "younger individual," he has a "limited education," and he is

able to communicate in English, as those terms are defined by the regulations.  (Tr. at 28.)  He determined that there is no evidence the plaintiff has "acquired any skills from his past semiskilled work as a stage hand which would transfer to any work at the light or sedentary levels of exertion."  (*Id.*)  After considering Mr. Cummings's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Mr. Cummings can perform, such as a garment folder, an assembler of small parts, and a hand packager.  (Tr. at 28-29.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from September 7, 2007, through the date of this decision."  (Tr. at 29.)

II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See*

*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

       Mr. Cummings alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ failed to state the weight to

be accorded to the testimony of Mrs. Sharon Kirkland, Plaintiff's mother. (Doc. 7 at 13.)    Second, Plaintiff contends that the ALJ used incorrect legal standards to determine the weight to be accorded to the opinion of Dr. Jon Rogers, a one-time mental health examiner. (*Id.*)

A.    Weight to Testimony of Mrs. Sharon Kirkland, Plaintiff's Mother

Plaintiff contends that the ALJ failed to state the weight to be accorded to the testimony of Mrs. Sharon Kirkland, Plaintiff's mother, and submits that if the ALJ had found his mother's testimony credible, that there would be no job that he could perform. (Doc. 7 at 14.)    Plaintiff also contends that the ALJ never stated whether he even considered Mrs. Kirkland's testimony at all, and never stated whether he found her testimony credible or not, and the reasons therefore. (*Id.*)

First, Mrs. Kirkland is considered an "other source," as defined by 20 C.F.R. §§ 404.1513(d), 416.913(d), whose testimony *may* be considered to establish an impairment (emphasis added).   The regulations are clear that Mrs. Kirkland is not an "acceptable medical source."   *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Her testimony in regards to Plaintiff's ability to work is lay evidence, which is not given the same weight as that of an "acceptable medical source" or treating physician when establishing the existence of an impairment.   *See* 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *but see Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) ("the testimony of a *treating physician* must be given substantial or considerable weight unless 'good cause' is shown to the contrary") (emphasis added).

Plaintiff relies on *Lucas v. Sullivan,* 918 F.2d 1567, 1574 (11th Cir. 1990), in which the Eleventh Circuit remanded the case in part because the ALJ's decision did not review the testimony of "other sources," or give the reasons for rejecting this testimony. The court required the ALJ on remand to state the weight that he accorded to the testimony of the plaintiff's daughter and neighbor and the reasons to accept or reject this testimony. *Id. Lucas* is distinguishable because, despite Plaintiff's contention to the contrary, the ALJ explicitly discussed Mrs. Kirkland's testimony in his decision. (Tr. at 19, 21, 26.) The ALJ considered this testimony when determining the plaintiff's condition as a whole. The ALJ specifically relied on statements from Mrs. Kirkland related to Plaintiff's personality changes after his accident in 2005, describing that he could take care of himself, but had memory problems; that medication had controlled his seizures for over a year; that he had custody of his children every weekend and was able to sufficiently care for them; that plaintiff never lost his driver's license based on his condition, and owned a car which he drives on a

regular basis; and that he was able to get along with his ex-wife, while sharing joint custody of his children. (*Id.*)

Additionally, the ALJ is not required to make a specific credibility determination as to a family member's testimony or statements, if this determination is implicit in the rejection of the Plaintiff's own testimony. *See Osborn v. Barnhart,* 194 F. App'x 654, 669 (11th Cir. 2006) (held that the ALJ did not err in failing to specifically mention the plaintiff's wife's testimony since his "specific and explicit credibility determination" as to the plaintiff's testimony sufficiently implies a rejection of his wife's testimony as well); *see also Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir. 1983) (held that "this circuit does not require an explicit finding as to credibility," but rather findings may be by implication if they are "obvious to the reviewing court"). In this case, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not totally credible to the extent they are inconsistent with the RFC assessment. (Tr. at 21.) Although Plaintiff does not specifically challenge on appeal the ALJ's determination that he was not credible, the Court will discuss why substantial evidence supports the ALJ's articulated reasons for discrediting Plaintiff's subjective testimony, such that

it was not necessary for the ALJ to make explicit findings as to Plaintiff's mother's testimony.

If the ALJ discredits the claimant's subjective testimony of pain and other symptoms, he must articulate explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996).   Here, the ALJ noted that the plaintiff's testimony on his alleged disability is based solely on mental impairments, but pointed out that Plaintiff has not sought ongoing mental health treatment from a professional since 2007. (Tr. at 317-19.)  In fact, Plaintiff was discharged from the care of the mental health center at his request in July 2007, with a discharge diagnosis of only an unspecified depressive disorder. (*Id.*)  Further, since the previous ALJ's denial decision[1], Plaintiff has only continued to seek treatment from Dr. Suggs, his treating neurologist and psychiatrist. (Tr. at 334-35, 424-29.) The ALJ took into consideration the records and treatment notes from Dr. Suggs, and found that they were not consistent with Plaintiff's assertions of the frequency and severity of symptoms, and the limitations he alleges. (Tr. at 21, 334-35, 424-29.)  For example, the record shows Plaintiff's visits to Dr.

---

[1]Plaintiff previously filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on September 12, 2005.  On September 6, 2007, an ALJ found that the plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act, and denied those applications. (Tr. 81-99.)

Suggs to be as much as eight to nine months apart. (Tr. at 424-29.)  Plaintiff visited Dr. Suggs in September 2008, after which he did not return until June 2009, at which time he reported his "spells" and seizures to be greatly improved when on medication.  (Tr. at 425-26.)  Dr. Suggs also noted in the record that Plaintiff had normal electroencephalogram findings and an unremarkable CT study of the head, both in 2009. (Tr. at 424, 427.)  Dr. Suggs noted that Plaintiff was treated for headaches, however, no evidence suggests that the severity or frequency would interfere with a range of light work. (Tr. at 424-25.)

Additionally, the ALJ considered Plaintiff's own testimony on his activities of daily living and his demeanor at the administrative hearing when determining the credibility of his allegations of disability. (Tr. at 25-27.)  Plaintiff reported that his daily activities include significant involvement in the care of his children, maintaining relationships with friends and family members with no difficulties interacting, and driving on a regular basis. (Tr. at 48, 280-81, 443-44 .)  At the administrative hearing the ALJ noted that the plaintiff was alert, aware, focused, had good recall, and was not in any apparent discomfort.  (Tr. at 27.)  The Eleventh Circuit has held that an ALJ is not prohibited from using a claimant's appearance and demeanor during the hearing in assessing credibility as long as it is considered in connection with the other medical

evidence in the case. *Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987).  The ALJ concluded that the extent and severity of symptoms described by the plaintiff throughout the record would limit his daily activities to a greater extent than what was described by the plaintiff and his mother.  (Tr. at 27.)

Finally, the ALJ considered Plaintiff's unstable work history to aid in assessing his credibility. Plaintiff testified to "job-hopping," with a work history made-up of short-term and/or temporary jobs. (Tr. at 27, 443.)  The plaintiff also admitted to not having a significant desire to work steadily prior to his alleged disability.  (Tr. at 56.) The ALJ concluded that Plaintiff "did not work consistently or in a manner reasonably approaching his maximum potential even before becoming disabled," and that even though he is poorly motivated to work, this does not mean he is incapable of working. (Tr. at 27.)

Based on the foregoing considerations, the ALJ properly concluded that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible. (Tr. at 21.) In light of this conclusion, the ALJ did not need to further discuss the testimony of Plaintiff's mother, and was not required to make a specific credibility determination as to her testimony or statements, because

his determination was implicit in the rejection of the plaintiff's testimony. *See Osborn*,

194 F. App'x at 669.

    B.    Weight to Testimony of Dr. Jon Rogers, a One-Time Mental Health
          Examiner

    Plaintiff contends that the ALJ should have given greater weight to the opinion

from Dr. Jon Rogers, a one-time mental health examiner. (Doc. 7 at 16.)  The plaintiff

saw Dr. Rogers, at the request of his legal counsel, in May 2010, less than a month

prior to his hearing with the ALJ. (Tr. at 442-48.)  Prior to that visit, Plaintiff had been

discharged from the care of the mental health center at his request in July 2007, was

not seeking any continued medical treatment for his symptoms, and had no evidence

from a mental health professional to support his allegations of disabling mental illness.

(Tr. at 317-19.)  At that time, Dr. Rogers reported that Plaintiff had marked limitations

in his ability to maintain concentration, persistence and pace; respond to customary

work pressures; understand, carry out, and remember instructions; and perform

repetitive tasks in a work setting. (Tr. at 447-48.)  The ALJ assigned little weight to

this opinion because Dr. Rogers was not a treating source, his opinion was not

consistent with his own examination notes or those of Plaintiff's treating physician

and other examining physicians, it was based on Plaintiff's subjective complaints and

not supported by substantial evidence, and the Supplemental Questionnaire as to

Residual Functioning Capacity completed by Dr. Rogers was not supported by objective findings.

The ALJ was under no legal obligation to adopt the conclusions of Dr. Rogers because he was not a treating source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Crawford*, 363 F.3d at 1160 (in holding that the ALJ's decision to discount a consultative psychologist's opinion that the claimant had marked psychological limitations was supported by substantial evidence, the court noted that the psychologist examined the plaintiff on only one occasion).  However, the ALJ was required to evaluate Dr. Rogers's opinion in accordance with the regulations, which explain the weight to be afforded a medical source's opinion.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Crawford*, 363 F.3d at 1160 (the weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source).  As will be shown, the evidence on record supports the ALJ's decision to give little weight to Dr. Rogers's opinion.

First, the opinion of Dr. Rogers was not consistent with his own examination notes. (Tr. at 442-48.)  Dr. Rogers noted that on mental status examination, the plaintiff was found to have normal articulation, conversation, stream of talk, speech, and mental activity, unimpaired judgement, good insight and orientation as to time, place, and person, and normal mood. (Tr. at 444.)  Dr. Rogers also found that the plaintiff had good memory, was able to recall both recent and less recent activities, and was able to recall specific facts. (*Id.*)  In fact, the only examination difficulties reported by Dr. Rogers were that the plaintiff could not perform "serial 7s" and could not spell the word "world" backwards. (Tr. at 444-45.) However, after interview, mental status examination, formal intelligence testing, and recording these notes, Dr. Rogers reported on a Supplemental Questionnaire as to Residual Functional Capacity, prepared by Plaintiff's attorney, that Plaintiff was markedly impaired in many areas, including several which were reported as good or normal in his examining notes. (Tr. at 447.) *See Russell v. Astrue*, 331 F. App'x. 678, 681-82 (11th Cir. 2009) (holding that the ALJ had good cause for affording little weight to an examiner's opinion where he appropriately found the plaintiff's other medical records failed to support the opinion, and that the doctor's own examination contradicted his opinion).

Second, Dr. Rogers's opinion is inconsistent with the Plaintiff's treating physician's records and the notes of other examining physicians. The records of Plaintiff's treating physician, Dr. Suggs, reported results similar to Dr. Rogers's examination notes, along with normal electroencephalogram findings and an unremarkable CT study of the head. (Tr. at 425-27.) Treatment records also show that Plaintiff only sought mental health care on two occasions, once in 2005 and once in 2007. (Tr. at 294-96, 304-05.) Treatment notes from another examining physician, Dr. Barry Wood, the mental health consultative examiner who examined the plaintiff in 2006 and 2008, indicated that Plaintiff only had minor deficits of memory and no significant deficits of cursory intelligence. (Tr. at 283.)  Also, in 2008, Dr. Wood reported that there was no objective evidence supporting Plaintiff's subjective complaints of cognitive and amnestic deficits, and found that there were no obvious deficits in short-term memory, and his long term memory was grossly intact. (Tr. at 343-44).   In 2007, Dr. Edward Love reported that Plaintiff's mood affect was appropriate and his insight and judgment were good. Dr. Love recommended medication to manage Plaintiff's "irritability and short fuse, and mild depressive symptoms," but the plaintiff never returned for further treatment.  (Tr. at 295-96, 303.) All these findings are contradictory to Dr. Rogers's conclusions on the

Supplemental Questionnaire that the plaintiff had marked limitations.  *See Kent v. Sullivan*, 788 F. Supp. 541, 544 (N.D. Ala. 1992) (holding that the report of a consulting physician who examined a plaintiff once does not constitute "substantial evidence" upon the record as a whole, especially when contradicted by the evaluation of the plaintiff's treating physician).

The ALJ also found that Dr. Rogers's assessment of the plaintiff on the Supplemental Questionnaire as to Residual Functional Capacity appeared to be based on Plaintiff's subjective complaints, and not supported by substantial evidence, as discussed in detail above. (Tr. at 24-25.)  The ALJ noted that Dr. Rogers apparently "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. at 25.)  The record supports the ALJ's finding, as Plaintiff's records from his treating physician showed that his neurological examinations were normal after his accident. (Tr. at 277, 290-91.)  Furthermore, the examination and treatment notes from other examining physicians, as well as Dr. Rogers's own examination notes, found that the plaintiff had normal or good mental capacity and functioning. (Tr. at 22-25, 283, 343-44, 444-48.)

In consideration of the foregoing evidence, the ALJ properly assigned little weight to the conclusion of Dr. Rogers on the Supplemental Questionnaire, determining that it was based mainly on the subjective complaints of the plaintiff. (Tr. at 25.) *See May v. Commissioner of Social Security,* 226 F. App'x 955, 958 (11th Cir. 2007) (holding that the clinical findings did not support the plaintiff's claims of the severity of her symptoms nor a condition that could be reasonably expected to cause such symptoms); *Reeves,* 238 F. App'x at 514 (holding that the ALJ did not err in discrediting the plaintiff's subjective testimony regarding the severity of her symptoms, as the record did not support a finding that there was objective medical evidence that confirmed the severity of these symptoms); *Crawford,* 363 F.3d at 1159-60 (upheld the ALJ's determination to discredit a physician's opinion because it was based primarily on subjective complaints unsupported by the medical evidence).

In his decision, the ALJ also properly considered that the Supplemental Questionnaire as to Residual Functioning Capacity form was in itself "suspect," given the mixture of almost all hand-circled answers on page one, and all answers on page two being computer boxed selections. (Tr. at 25, 447-48.) The opinions of Dr. Rogers on this form were "check-list" responses with no rationale or referral to examinations or objective findings, and had no explanation from the physician regarding his

conclusions for the limitations contained within it. (*Id.*)  Additionally, Dr. Rogers provided no explanation related to the evidence he relied on in reaching his opinions on the Supplemental Questionnaire. (*Id.*)  The conclusions reached on this form are not consistent with his examination notes, and it is not clear that he had Plaintiff's medical records to review. (Tr. at 24.)  Although Plaintiff's counsel states that Dr. Rogers was provided with "all of Plaintiff's relevant medical records," there is no evidence presented as to which records Dr. Rogers had or reviewed. (Doc. 7 at 16.)  Accordingly, the ALJ properly gave little weight to the conclusions reached by Dr. Rogers on this form, finding it to be conclusory and contradicted by other evidence in the record.  *See Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir. 1991) (held that a physician's opinion may be disregarded if it is unsupported by medical evidence or wholly conclusory).

Finally, Plaintiff raises two other issues regarding the ALJ's evaluation of the evidence from Dr. Rogers. First, Plaintiff contends that the ALJ rejected the opinion of Dr. Rogers because the examination was ordered by counsel. (Doc. 7 at 17.)  This contention is not correct because, while the ALJ did note that the examination was sought for the specific purpose of bolstering this claim, rather than for treating

Plaintiff's symptoms, he specifically noted that such an opinion "is legitimate and deserves due consideration." (Tr. at 24.)

Second, Plaintiff contends that the ALJ should have given greater weight to Dr. Rogers's opinion because his condition could have worsened between 2008, when he was examined by Dr. Wood, and 2010, when he was examined by Dr. Rogers. (Doc. 7 at 17.) This contention is not valid as the plaintiff has produced no evidence, other than Dr. Rogers's opinion on the Supplemental Questionnaire, to support his assertion that his condition worsened. Additionally, the examination notes of Dr. Wood reported little deterioration in Plaintiff's condition between 2006 and 2008. (Tr. 279-83, 341-45.) Plaintiff has not presented evidence of any factors which would have caused his condition to worsen after 2008. For all of these reasons, the Court is of the opinion that substantial evidence supports the ALJ's decision to give little weight to Dr. Rogers's assessment of Plaintiff's condition.

IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Cummings's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 8th day of February 2013.

_____
L. Scott Coogler
United States District Judge

[160704]